**Dalta R. KIRK, Plaintiff-Appellant,**

**v.**

**LAND & MARINE APPLICATORS, INC., et al., Defendants-Appellees.**

**No. 77–1165**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

July 7, 1977.

F.Supp. 563 (N.D.Ala.1961); *Ideal Structures Corp. v. Levine Huntsville Develop. Corp.,* 396 F.2d 917 (CA5 1968).

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5th Cir., 1970, 431 F.2d 409, Part I.

Dan C. Garner, R. Lee McDaniel, New Orleans, La., for plaintiff-appellant.

Glenn G. Goodier, New Orleans, La., for Land & Marine and Travelers.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

PER CURIAM:

The only issue in this suit brought under the Jones Act, 46 U.S.C.A. § 688 (1975), is whether Dalta R. Kirk, an offshore sandblaster and painter, was a crew member of the M/V MIGHTY RED at the time of his injury. The district court found that Kirk was not a seaman for Jones Act purposes, and granted the defendant's motion for summary judgment. We affirm.

Kirk filed this suit against his employer, Land and Marine Applicators, Inc., for injuries he sustained on September 13, 1974, when he slipped from a ladder located on a fixed platform in the Gulf of Mexico. Kirk had been hired as a platform sandblaster and painter approximately one week before the accident occurred. Kirk claims seaman status based upon his connection with the M/V MIGHTY RED, a support vessel for sandblasting activities conducted on offshore platforms. He ate and slept on the vessel. It carried some of the equipment he used in his platform sandblasting work. Kirk also contends that he performed certain duties aboard M/V MIGHTY RED that are sufficient to bring him within the rule announced in *Offshore Company v. Robison,* 266 F.2d 769 (5th Cir. 1959).

*Robison* provides:

There is an evidentiary basis for a Jones Act case to go to the jury:

(1) If there is evidence that the injured workman was assigned permanently to a vessel . . . or performed a substantial part of his work on the vessel; and

(2) If the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. 266 F.2d at 779.

Applying this standard to the facts before us, we conclude that Kirk did not satisfy either of the alternative grounds for establishing part (1) of the *Robison* test. Kirk did not perform a substantial amount of his work on the vessel. He discharged his principal duties as sandblaster and flagman on the fixed platform. His unloading of the sandblasting equipment from M/V MIGHT RED onto the platform in the morning and his cleaning of the sandblasting equipment onboard the vessel at the

end of the work day were incidental to his duties on the fixed platform. Kirk points out that he helped clean and unload the vessel at Venice, Louisiana, but the record shows that this was no more than a fortuity occasioned by bad weather and that when the vessel finally reached the platform, Kirk immediately debarked and began his sandblasting work on the platform. It was equally incidental and fortuitous that Kirk occasionally performed minor chores, such as kitchen-sweeping, while aboard the M/V MIGHTY RED. Kirk never participated in the navigation of the vessel or in the maintenance of her engines or hull. Nor did he cook for the crew.

The district court did not expressly address the question whether Kirk was permanently assigned to the M/V MIGHTY RED. The record demonstrates, however, that the defendant maintained four vessels to support platform sandblasting work. Painters and sandblasters, such as Kirk, were not specifically assigned to any one of the four. During a fourteen day shift a worker might be quartered on more than one vessel or on none at all, depending upon the duration of the particular sandblasting or painting job and the availability of quarters on the platform on which the work was performed.

Although our recent decision in *Davis v. Hill Engineering, Inc.,* 549 F.2d 314 (5th Cir. 1977) reached a contrary result, the facts distinguish the situations involved. Davis was a welder's helper who was injured aboard a barge while assisting in the installation of metering facilities at an offshore gas gathering station. The court found him to be a seaman for Jones Act purposes in part because he was permanently assigned to a vessel. Like Kirk, Davis had several incidental ties to his support vessel. He ate and slept on the vessel and performed chores and a portion of his work there. However, Davis' connection with his vessel was more substantial than was Kirk's. Davis expected to remain quartered on the W–701 for 20–30 days—and had he not resigned he would have been housed there from mid-November 1971 until June of 1972—while Kirk could never

have remained aboard any of the four support vessels owned by his employer for more than fourteen days at a time. Furthermore, Kirk would not even have been quartered on the M/V MIGHTY RED for the whole of a single shift if housing had been available on the platform, and he may not have been aboard her again for a considerable period of time.

Since Kirk cannot establish the connection with a vessel that *Robison* requires, we conclude that he was not a seaman for Jones Act purposes. The decision of the district court is

AFFIRMED.