**Jonell C. MYRICK, Administratrix of the Estate of Gary R. Myrick, Plaintiff,**

v.

**TELEDYNE MOVIBLE OFFSHORE, INC. and Continental Oil Company, Defendants.**

No. H–78–2065.

United States District Court, S. D. Texas, Houston Division.

June 12, 1981.

---

James R. Clark, Edward R. Weiss, Houston, Tex., for plaintiff.

Joseph J. Weigand, Jr., Houma, La., for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Presently pending before the Court is a motion for summary judgment filed by the defendants, Teledyne Movible Offshore, Inc. and Continental Oil Company. An evidentiary hearing was conducted on May 21, 1981, in connection with the pending motion.[1] The Court, having considered the motion, the evidence presented at the hearing, and the materials filed in this action, concludes that the defendants' summary judgment motion should be granted.

1. The defendants filed a previous motion for summary judgment based on a single affidavit. The motion was referred to the United States Magistrate who filed a memorandum and recommendation. The Court accepted the magistrate's recommendation and denied the defendants' motion. Subsequently the Court granted leave for the defendants to file a second motion for summary judgment.

2. The Jones Act, 46 U.S.C. § 688, provides a vehicle for seamen injured in the course of employment to sue their employers for negligence. Liability for even slight negligence is often imposed under the Act. The Act may

The plaintiff is the administratrix of the estate of Gary R. Myrick, deceased. The decedent was employed by Teledyne Movible Offshore on June 26, 1977, as a maintenance helper or roustabout and was assigned to Movible Rig No. 12. At the time of the accident Rig No. 12 was mounted on a drilling and production platform owned by Continental Oil Company and located about forty miles off the coast of Louisiana in the Gulf of Mexico. On July 1, 1977, having served only a few days of his first hitch, Myrick fell from one level of the platform to a lower deck and died. Following Myrick's death, the plaintiff instituted this action for damages under the Jones Act, the Death on the High Seas Act, and general maritime law.[2]

The defendants have filed a motion for summary judgment claiming that the platform rig to which Myrick was assigned was not a vessel and that Myrick was not a seaman. On the basis of that claim, the defendants assert that the plaintiff is not entitled to recover on any of the three grounds for relief stated in the complaint. The plaintiff, on the other hand, argues that there exists a sufficient evidentiary basis to submit to the jury the issue of Myrick's status as a seaman aboard a vessel.

### 1. The Jones Act Claim.

The determination of a person's status as a Jones Act seaman is a mixed question of law and fact which ordinarily should be submitted to a jury. If, however, there is no reasonable evidentiary basis to

also be used to secure a jury trial on a related unseaworthiness claim.

The Death on the High Seas Act, 46 U.S.C. § 761 et seq., provides a limited remedy in admiralty for deaths which occur more than one marine league from the shore of any state or territory. See Mobil Oil v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).

The general maritime law provides a cause of action for death occurring on navigable waters. See Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

support a jury finding that a platform worker is a seaman under the Jones Act, then the matter may be properly addressed in a motion for summary judgment. *See Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280–82 (5th Cir. 1981); *Guidry v. Continental Oil Co.*, 640 F.2d 523, 529 (5th Cir. 1981); *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1345–46 (5th Cir. 1980). The burden remains on the movant to establish his right to summary judgment with such clarity that the nonmoving party cannot recover under any circumstance. *See Guidry*, 640 F.2d at 529.

■ Two factors must be considered in determining whether a reasonable evidentiary basis exists for submitting the issue of seaman's status to the jury:

(1) [whether] there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) *or* performed a substantial part of his work on the vessel; *and* (2) [whether] the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Longmire*, 610 F.2d at 1346 (quoting *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir. 1959)). The Court finds that there is no reasonable evidentiary basis to warrant submission of the seaman issue to the jury and that the defendants have clearly established their summary judgment claim that the platform rig in issue is not a vessel and that plaintiff's decedent was not a seaman.

■ Two general classes of structures are used in offshore oil and gas exploration and production: floating rigs, which are treated as vessels, and fixed platforms, which are not treated as vessels. This distinction between vessels and nonvessels is the key to determining which remedy is available to an offshore petroleum worker. Generally, the worker aboard a floating rig

classified as a vessel is considered to be a seaman. A fixed platform worker, on the other hand, is usually not considered to be a seaman and is denied access to seaman's remedies even though his duties may be substantially the same as those of a worker on a floating rig. *See* Robertson, *Injuries to Marine Petroleum Workers: A Plea for Radical Simplification*, 55 Tex.L.Rev. 973, 982, 992–1022 (1977).

■ The test for determining whether a particular watercraft or other structure constitutes a vessel requires examination of (1) the purpose for which it is constructed, and (2) the business in which it is engaged. *Guidry*, 640 F.2d at 529 n.18; *Smith v. Massman Constr. Co.*, 607 F.2d 87, 88 (5th Cir. 1979); *Blanchard v. Engine & Gas Compressor Serv.*, 575 F.2d 1140, 1142 (5th Cir. 1976). It is well settled that a drilling and production platform permanently attached to the ocean floor is not a vessel. *See Longmire*, 610 F.2d at 1348 n.10; Robertson, *supra* at 982, 992–93.

In the case before the Court, the defendants have clearly established that the drilling and production platform owned by Continental Oil Company is not a vessel. The structure was designed and built for use in oil and gas drilling and production. It was constructed on shore and transported by barge to its site in the Gulf of Mexico where it remains at this time. Each of the platform's four legs were permanently imbedded in the ocean floor at that location. The platform is immobile. There are no retractable legs, towers, or casings on the platform. It cannot float and cannot navigate. It has no engines, bilge pumps, or anchors. The platform is equipped, however, with navigation lights and foghorns. It is also equipped with flotation devices and other lifesaving equipment. Nonetheless, it is a fixed platform and not a vessel.

The defendants also established that Movible Rig No. 12 is not a vessel. Teledyne Movible Offshore, Inc. was and still is the owner and operator of Rig No. 12. Movible Rig No. 12 is a platform drilling rig designed and used to drill wells from platforms in the Gulf of Mexico. On July 1,

1977, Movible Rig No. 12 was located on the Continental Oil Company platform described above. Sometime prior to that date the dismantled rig had been transported to that location by derrick barge and assembled on the platform to perform drilling operations. Following completion of drilling, the rig is ordinarily disassembled into four or five large components and transported by barge to another platform site. Movible Rig No. 12 cannot float and cannot navigate. It has no engines by which to propel itself on the water. Although Movible Rig No. 12 is outfitted with lifesaving equipment, it is not a vessel.

■ On the basis of the summary judgment evidence, the Court concludes that neither the platform nor the rig is a vessel. Accordingly, the plaintiff's decedent appears to have been a fixed platform worker and not a seaman. He was neither working aboard nor permanently assigned to a vessel. Seaman status might be attained, however, if there existed a sufficient connection between Myrick and some auxiliary vessel involved in the platform operations. *See Ardoin,* 641 F.2d at 282. The defendants clearly established that no such connection existed.

The summary judgment evidence showed that plaintiff's decedent did not perform any substantial part of his work on any auxiliary vessel. Although it is not clear whether Myrick was transported to the platform drilling rig by crewboat or helicopter, the evidence showed Myrick was employed on the platform rig as a roustabout from June 26, 1977, to July 1, 1977. A roustabout usually performs general labor and maintenance duties. The crane operator on Movible Rig No. 12 testified that no tender or auxiliary vessel was moored alongside the platform during Myrick's employment. He further testified that Myrick did no work off the platform. The witness was unsure whether Myrick participated in loading or unloading vessels which serviced the platform from time to time. Such activity alone, however, would not be suffi-

cient to confer seaman's status on plaintiff's decedent. *Id.* Further, Myrick slept and ate in the crew quarters located on the platform. Myrick's injuries occurred on the platform drilling rig. Myrick's contacts with a vessel, if any, would have been sporadic and fortuitous. *See Id.* On the basis of the summary judgment evidence the Court finds that Myrick did not perform a substantial part of his duties on a vessel.

For the reasons stated above the Court concludes that the only logical inference is that Myrick was not a Jones Act seaman and that plaintiff is not entitled to recover under the Jones Act. Accordingly, plaintiff's Jones Act claim should be dismissed.

Courts tend to peg discussions of seaman status on claims under the Jones Act since the decision on that claim often determines the fate of other claims. Nonetheless, a brief analysis of the other claims presented in plaintiff's complaint is necessary. *See* Gilmore & Black, The Law of Admiralty 329 (2d ed. 1974).

### 2. *The General Maritime Law Claim.*

The defendants also assert that the plaintiff is not entitled to recover damages for Myrick's death under the general maritime law. The Court, having considered the summary judgment motion and evidence, and examined the applicable law, concludes that the defendants' assertion is correct. Accordingly, the plaintiff's general maritime claim must be dismissed.

■ The general maritime law provides a cause of action for death occurring on navigable waters. *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974); *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).[3] Of course, such a claim must arise within the admiralty jurisdiction in order for the maritime law to apply. The test for determining whether admiralty tort jurisdiction exists requires examination of the locality of the occurrence and the relationship of the wrong to

---

**3.** A remedy based on unseaworthiness ordinarily is available only against the shipowner and

the vessel. *Stokes v. B. T. Oilfield Services, Inc.,* 617 F.2d 1205, 1207 (5th Cir. 1980).

traditional maritime activity. *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Richardson v. Foremost Ins. Co.*, 641 F.2d 314, 315 (5th Cir. 1981).

In the case before the Court it is clear that the claim did not arise within the admiralty jurisdiction and, consequently, that maritime law does not apply. The Court has determined that the structure on which plaintiff's decedent worked and suffered fatal injuries was a fixed platform. Although surrounded by the high seas, the structure is not within the admiralty jurisdiction. *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 359–61, 89 S.Ct. 1835, 1839–40, 23 L.Ed.2d 360 (1969). Rather, the fixed platform is treated like an island. *Id.* Thus, the accident resulting in Myrick's death did not occur on navigable waters or on a vessel. It occurred on a stationary drilling platform and the maritime law does not apply. Further, the accident did not involve a collision with a vessel and the structure involved was not a navigational aid. Thus, there is no basis for extending the admiralty jurisdiction to include the platform in issue. *Id.* The activity in which plaintiff's decedent was engaged was not a traditional maritime activity. Although some fixed platform work and risks may be maritime in nature, the decedent's duties leading to the accident might well have been performed by a land based counterpart. Moreover, offshore petroleum workers are provided with alternative remedies for death or injury resulting from their employment. *See Id.* at 355–59, 361–66, 89 S.Ct. at 1837–39, 1840–42.

3. *The Death on the High Seas Act Claim.*

The Death on the High Seas Act, 46 U.S.C. § 761 *et seq.*, provides a statutory remedy in admiralty for deaths which occur more than one marine league from shore. Recovery under the Act is limited to pecuniary losses. The defendants assert in their motion for summary judgment that plaintiff is not entitled to recover under the Act because admiralty jurisdiction is lacking since Myrick's fatal injuries occurred on the stationary drilling platform in issue and not on a vessel or in navigable waters. The Court, having considered the motion and examined the applicable law, concludes that plaintiff is not entitled to recover damages under the Death on the High Seas Act.

The structure where plaintiff's decedent suffered fatal injuries was a fixed drilling and production platform not subject to the admiralty jurisdiction. Accordingly, the Death on the High Seas Act is inapplicable. *Rodrigue*, 395 U.S. at 355, 89 S.Ct. at 1837.

For the reasons stated above, the Court hereby ORDERS:

The defendants' motion for summary judgment is GRANTED. Accordingly, the claims set forth in plaintiff's complaint are DISMISSED.