Hubert J. PERCLE and Louis J. PERCLE as Administrator of Hubert J. Percle's Estate, Plaintiffs,

v.

WESTERN GEOPHYSICAL COMPANY OF AMERICA, Hosking Exploration of Salt Lake City, Utah, Defendants.

Civ. A. No. 79–3136.

United States District Court, E. D. Louisiana.

Nov. 12, 1981.

James M. Boone, Folsom, La., for plaintiffs.

Eugene Jericho and Robert Leake, for defendant Hosking Exploration of Salt Lake City, Utah.

Ashton R. O'Dwyer, Jr., and Miles P. Clements, New Orleans, for defendant Western Geophysical Co. of America.

CASSIBRY, District Judge:

Plaintiffs are seeking to recover damages under the Jones Act and the seaworthiness doctrine of the general maritime law for the death of Hubert J. Percle. The case was tried before the court without a jury. The court having considered the pleadings, the testimony of the witnesses, the documents in evidence and the posttrial submissions of counsel hereby makes the following findings of fact and conclusions of law, as required by Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. The plaintiffs are Mr. and Mrs. Louis J. Percle, parents of the deceased Hubert J. Percle, and Mr. Louis J. Percle, Administrator of the Estate of Hubert J. Percle.

2. The defendant is Western Geophysical Company of America, [Western] a corporation organized and existing by virtue of the laws of Delaware and having its principal place of business in Houston, Texas. It was the employer of Hubert J. Percle.[1]

3. Hubert J. Percle, the driver of a marsh buggy owned and operated by his employer Western in the Louisiana marshes south of New Orleans, was killed on July

---

1. The claim against defendant Hosking Exploration Helicopters, Inc., a foreign corporation authorized to do business in Louisiana, was settled before trial.

18, 1979 when the blade of a helicopter owned and operated by Hosking Exploration Helicopters, Inc., [Hosking] struck him as the helicopter pilot Wesley Gordon attempted a hovering maneuver to service the marsh buggy.

4. The marsh buggy is an amphibious personnel carrier, operating similar to a tractor or tank on land, but is capable of floating on small lakes, canals and streams. It can transport a work crew of 12 or 15.

5. The marsh buggy of defendant on which the accident occurred was built by Quality Industries, Thibodaux, Louisiana, and sold to defendant. It was constructed to travel on land or water, but was designed primarily to travel in poor land conditions, rather than on water. It could be floated in navigable waters at a speed up to two or three miles per hour, but flotation was not its primary purpose.

6. At the time of the accident, and for the week before, the period of Hubert Percle's employment as driver, the marsh buggy was traveling in the marsh which consisted of areas of dry land, areas of muck, and areas of water ranging in depth from 12 to 18 inches, but through which a boat could not be operated. It crossed navigable streams as necessary to continue its travel through the marsh.

7. The marsh buggy was being used in the defendant's geophysical exploration business. It transported the work crew and gear used in the seismic operation, a process of taking readings in the marsh for petroleum deposits.

8. Western had contracted with Hosking for Hosking to provide air taxi service for its seismic operations. Early on the day of the accident, pilot Gordon had delivered several cans of diesel fuel to the marsh buggy according to the accepted procedure of advising the work crew by radio of his intention to offload the cans, and then dropping the cans off at a distance from the marsh buggy for later pickup by the crew.

9. Near lunch time Gordon approached the marsh buggy without radio contact, circled the marsh buggy several times pointing to the cans of fuel on the decking of the marsh buggy, which he mistakenly concluded were empty, but was unable to make himself understood by merely pointing. The crew was unable to contact him by radio because he had switched to another channel, and could have switched back only by landing the helicopter. Gordon then began hovering very close to the rear of the marsh buggy, about four or five feet above the marsh, allowing the right pontoon of the helicopter near to, or to rest upon, the decking of the marsh buggy which protruded outside the handrail, and opened the front door of the marsh buggy.

10. At a signal from Gordon, David Marshall, one of the work crew, climbed onto the helicopter pontoon and was told by Gordon to load the fuel cans. With the assistance of another crew member, Michael Knox, Marshall began loading the cans into a basket located between the pontoons of the helicopter. Gordon then ordered that the cans be placed inside the helicopter. When two cans were loaded, Gordon realized that the cans were full and he ordered them removed from the helicopter. While this last instruction was being complied with, the helicopter apparently became snagged on the handrail of the marsh buggy, went out of control and crashed onto the marsh buggy, causing the fatality.

## CONCLUSIONS OF LAW

1. The court has jurisdiction under the Jones Act, 46 U.S.C. 688 and the general maritime law.

2. The plaintiffs cannot recover under the Jones Act or the doctrine of seaworthiness because the marsh buggy was not a vessel. Only seamen are entitled to the benefits of the Jones Act. A worker cannot be a seaman unless he is employed aboard a vessel in navigation. *Offshore v. Robison*, 266 F.2d 769 (5th Cir. 1959). Special purpose structures and facilities capable of floating on navigable water have been held to be vessels, notwithstanding their lack of similarity to the usual vessel in navigation. *Offshore v. Robison, supra; Hicks v. Ocean Drilling and Exploration*

*Company*, 512 F.2d 817 (5th Cir. 1975), and authorities cited; *Dardar v. State of Louisiana*, 322 F.Supp. 1115 (E.D.La.1971).

3. The test in the Fifth Circuit for determining whether a particular watercraft or other structure constitutes a vessel for purposes of the Jones Act requires examination of (1) the purpose for which it is constructed, and (2) the business in which it is engaged. *Hicks v. Ocean Drilling and Exploration Company, supra*; *Blanchard v. Engine and Gas Compressor Services, Inc.*, 575 F.2d 1140 (5th Cir. 1979); *Smith v. Massman Construction Co.*, 607 F.2d 87, 88 (5th Cir. 1979); *Guidry v. Continental Oil Company*, 640 F.2d 523, 529 (5th Cir. 1981); *Myrick v. Teledyne Movible Offshore*, 516 F.Supp. 602, 605 (S.D.Tex.1981). Mere flotation on water does not constitute a structure a vessel. *Blanchard, supra* at 1143.

4. An examination of both prongs of the test results in the conclusion that the marsh buggy was not designed primarily to be engaged in navigation or commerce. Its travel in navigable streams was so incidental to its primary purpose of travel in poor land conditions, and its use in navigable streams was such a small part of its total operational use that the marsh buggy cannot be regarded as a vessel at all times. This is not to say that the marsh buggy could not be regarded as a vessel if, at the time of the accident, it had actually been traveling in a navigable stream and thus have been engaged in navigation. See *Hicks, supra*, at 821; *Blanchard, supra*, at 1143, footnote 5. This amphibious vehicle is then, at the most, what the descriptive phrase signifies—a "sometime vessel". At the time of the accident it was operating in the marsh where the depth of the water was about 12 inches. It was therefore not a vessel and Hubert Percle was not a seaman.

5. The analogy urged by plaintiffs of this case to those cases which hold that a seaman may recover under the Jones Act for injuries incurred while doing work ashore for his employer is not appropriate. See *Braen v. Pfeifer Oil Transportation Co.*, 361 U.S. 129, 133, 80 S.Ct. 247, 250, 4 L.Ed.2d 191 (1959); *Crafton v. Tennessee Valley Sand & Gravel Co.*, 408 F.2d 1096, 1097 (5th Cir. 1969); *Dardar, supra.* In those cases the work ashore was temporary. Percle's work in the marsh was by far the major part of his employment. In the recent case *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447 (1980), the Fifth Circuit held that a seaman's status does not necessarily continue as to all assignments of work ashore. He may lose that status "dependent on such factors as the duration of the assignment", etc. p. 453. Even conceding that Percle was a seaman when the marsh buggy was on navigable water, he lost that status when he went into the marsh.

6. The traditional remedy for unseaworthiness owed by the owner of a vessel was not owed to Hubert Percle, and no recovery can be had on that ground.

7. Since Western is not liable to the plaintiffs, its cross claim against Hosking for reimbursement, indemnification, and/or contribution from Hosking for any amount for which it is held liable to plaintiffs, together with all costs, disbursements, expenses and reasonable attorneys' fees expended in the defense of this action is without merit and the cross claim will be dismissed.

The Clerk shall prepare judgment dismissing the complaint against Western and dismissing the cross claim of Western against Hosking.

## ADDENDUM

In the event that this case is appealed and the appellate court does not agree with my determination that the marsh buggy was not a vessel and that Hubert Percle was not a seaman, I make the following conclusions as to the negligence of the defendant Western under the Jones Act and the seaworthiness of the marsh buggy.

The defendant was not negligent. The failure of the defendant to order a roll bar cage, which would protect against the impact of timbers and other objects striking the buggy, or a helicopter landing pad as a

modification of the marsh buggy was not negligence. These were not necessary for the servicing of the marsh buggy by the helicopter. The defendant cannot be held to foresee the unorthodox and grossly negligent procedure used by the pilot Gordon in hovering too close to the marsh buggy, and thus be required as a safety measure to protect the buggy from such an extreme circumstance.

The plaintiff's claim that Western was negligent in having an inadequate and undertrained crew regarding safety operations around helicopters is not sustained. David Marshall did not, as charged by plaintiffs, do "a foolish thing" by loading full diesel fuel cans onto the helicopter. Negligence, or the lack of it, is to be determined by all of the circumstances at the time of the alleged negligent act or omission. The act of the pilot in swooping down upon the marsh buggy without any prior radio contact, his indication that he needed something of the crew, his moving in closer after a failure of communication from his pointing to the fuel cans, all exerted a feeling of urgency to the crew to ascertain what he wanted and to comply with his instructions. The crew was not negligent in failing to instruct or admonish the pilot about proper operation and maneuvering of the helicopter. He had the expertise, not they, and they could reasonably rely on his experience.

The opinion of the pilot Gordon that the accident would not have happened if Marshall had not climbed on the float may be valid, but Gordon's gross negligence caused Marshall to make such a move, and it was reasonable under the circumstances created by that negligence for Marshall to attempt to accommodate him.

Plaintiffs' claim that Gregory Mosley, the party manager for the crew, was negligent in merely chastising Gordon earlier in the day for setting down too close to the marsh buggy, rather than discharging him is not sustained. It was reasonable for Mosley to assume that Gordon would follow his direction and set down farther away from the marsh buggy on future landings. Mosley could not reasonably have been expected to anticipate that Gordon would attempt such an unusual hovering maneuver.

For reasons discussed above the marsh buggy was not unseaworthy for lack of the modification suggested by plaintiffs, or for having an inadequate crew.