**Mr. & Mrs. Noel MUNGIA, Plaintiffs-Appellants,**

v.

**CHEVRON COMPANY, U.S.A., Defendant-Appellee.**

No. 81–3604
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 22, 1982.

---

Silvestri, Marinaro & Massicot, Frank A. Silvestri, New Orleans, La., for plaintiffs-appellants.

McLoughlin, Barranger, Provosty & Melancon, Lloyd C. Melancon, New Orleans, La., for defendant-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Plaintiff Noel Mungia was employed by Chevron as an oilfield roustabout assigned to work out of its office in Venice, Louisiana. While working on his seven days on and seven days off schedule, he ate and slept on his workdays at Chevron's E–5 bunkhouse on land in Plaquemines Parish. He claims an injury to his back on September 9, 1979, aggravating prior injuries and resulting in disabilities. He is now receiving workers' compensation disability benefits.

■ The Mungias, husband and wife, brought suit under the Jones Act, 46 U.S.C. § 688, claiming the injuries were sustained while he was a seaman within the meaning of that statute. Chevron removed the case to the United States District Court asserting diversity jurisdiction. After discovery, the district court granted summary judgment for defendant Chevron on the ground that the plaintiffs could not claim the benefits of the Jones Act under *Billings v. Chevron USA, Inc.*, 618 F.2d 1108 (5th Cir. 1980). Finding a genuine question of law and fact as to whether Noel Mungia was entitled to claim coverage under the Jones Act, we must reverse the summary judgment in favor of Chevron.

Plaintiff Mungia's affidavit submitted to the trial court reports that he travelled to and from work on the various platforms, well structures, Christmas trees, and tank batteries in sixteen to twenty foot long Jo-Boats owned by Chevron. He further swore that he was sometimes called upon to do maintenance work on the boats including changing propellers, shafts and impellers. The critical assertion under oath by Noel Mungia, however, is that "during the last year of his employment more than 90% of his activities involved piloting and making up these Jo-Boats by himself" and that his activities "generally included hauling pipe and other oilfield equipment to and from various structures and loading and unloading same." He avers that at the time of his accidents he was "working from a Jo-Boat or wire line barge".

In *Billings v. Chevron USA, Inc., supra,* we held that the Jones Act was not applicable to the injury involving Billings, who was a roustabout on a fixed platform rig owned by Chevron and located in the Gulf of Mexico approximately seven miles from the outlet of the Mississippi River. Billings ate and slept on the platform and worked at all times on the platform. His job also included loading and unloading tenders which frequently docked at the platform. At the time of his injury he was aboard a tender docked at the platform and loading pipe from the rig onto the vessel. We quite properly held in that case that this employee who was located on the fixed drilling platform was not a seaman under the Jones Act. He was a regular oilfield roustabout. In that case, we held that Billings working from time to time on tenders as they unloaded at his fixed drilling platform did not make him "a member of the crew" of such tenders.

If the plaintiff's duties in this case were the typical roustabout duties involved in *Billings*, there would be no question but that the summary judgment was justified. In *Billings*, however, there was no evidence that the injured employee had anything to do with the navigation of the tender or barge involved. He was a roustabout employee who was injured on a vessel but had no connection whatsoever with the vessel as a possible crewman or as having any responsibilities in the navigation of the vessel. In compelling contrast, appellant Mungia states under oath that in the last year of his employment before his final disabling accident, "more than 90% of his activities involved piloting and making up these Jo-Boats by himself."

Appellee Chevron urges that appellant cannot be considered a seaman because he was not assigned as a member of the crew of a particular vessel. But as Judge Randall, writing for the Court in *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 281 (5th Cir. 1981), said, "the permanency requirement may be satisfied by assignment to a specific fleet of vessels . . . . The 'permanency' requirement is, we think, best understood as indicating that in order to be

deemed a 'seaman' within the meaning of the Jones Act 'a claimant [must] have more than a transitory connection' with a vessel or a specific group of vessels." Appellant's affidavit shows far more than a transitory connection with a specific group of vessels. It appears from his affidavit that even though he was classified a roustabout and had worked as a roustabout on various fixed drilling platforms over water for a period of time, his work had gradually become the piloting, navigation, loading and unloading of Jo-Boats. It is impossible under these circumstances to rule out coverage under the Jones Act by way of a summary judgment in favor of the employer. Under these circumstances, it is customary to refer to such an issue as a mixed question of law and fact, *Holland v. Allied Structural Steel Corp., Inc.*, 539 F.2d 476 (5th Cir. 1976), or, as we said in *Ardoin, supra,* "it may be more helpful to describe the issue as one whose resolution requires 'the application of legal principles to specific underlying facts about what the parties did or did not do.' *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980)." 641 F.2d at 280.

The facts of *Ardoin* are particularly illuminating to the resolution of this appeal. Ardoin was employed as a structural welder. His work regularly was to construct and salvage offshore drilling platforms. Such structural welders spend most of their time working on the platform, but the welding equipment they use is located aboard and operated from the derrick barge. These welders eat and sleep aboard the derrick barge while they are on such a job. They do not work fixed offshore shifts, nor do they always work with the same barge.

The district court granted summary judgment for the company against Ardoin's Jones Act claim resulting from an injury while dismantling an inoperative drilling platform. He was working on the platform. We reversed the summary judgment and found that the facts concerning Ardoin's work could "support a reasonable inference that he had a 'permanent' connec-

tion with the fleet of derrick barges operated by McDermott." *Id.* at 282. We further said, "we think it clear that a reasonable person could conclude that the work Ardoin performed was work which contributed to the function of, and to the mission of, the derrick barge." *Ibid.*

Mungia's connection with the navigation of vessels, as asserted in his affidavit, is far closer to the role of a seaman than was the role of the welder dismantling offshore drilling platforms in *Ardoin.* While it is true Mungia did not remain offshore for several days at a time as did Ardoin, this circumstance clearly is not controlling. In *Producers Drilling Co. v. Gray,* 361 F.2d 432 (5th Cir. 1966), we held a workman on a submersible drilling rig was a seaman although he stayed ashore every night. Although Mungia stayed ashore, his activities in piloting the Jo-Boats exposed him to the "peril of the sea" which is the foundation of Jones Act coverage. *Offshore Co. v. Robison,* 266 F.2d 769, 771 (5th Cir. 1959).

Mungia's affidavit is not directly challenged in any way by the appellee. Mungia is entitled to a trial on the merits to open the opportunity to establish these facts and the resultant conclusion that he was a seaman. The summary judgment in favor of appellee Chevron Co., USA, must be reversed.

We caution, however, that this reversal and remand is purely because of the misuse, under the circumstances, in granting summary judgment. Our decision is in no way a forecast of the proper outcome of the case on motion for instructed verdict at the end of the plaintiffs' case, any renewal at the end of the defendant's case, or at the conclusion of all of the evidence, or upon a motion for j.n.o.v. after receipt of an adverse jury verdict.

REVERSED.