563 So.2d 968 (1990)
Russell DANOS
v.
McDERMOTT INC., Compass Welding Co.
No. 89 CA 0702.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
*970 Louis J. St. Martin, Houma, for plaintiff and appellantRussell Danos.
Joseph Looney, New Orleans, for defendant and appelleeMcDermott Inc.
Betty Barrios, New Orleans, for defendant and appellantCompass Welding Co. and Lloyd's of London.
Robert Nolan, New Orleans, for defendant and appelleeNat. Union Ins. Co.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Russell Danos sued Compass Welding Co. (Compass), his employer, and McDermott, Inc. (McDermott) under the Jones Act 46 U.S.C.App. § 688, and general maritime law seeking to recover damages for injuries he allegedly suffered while falling down a set of stairs on McDermott's Barge No. 28.
In a non-jury trial, the district court found Danos was a seaman and a borrowed servant of McDermott. It found negligence existed on the part of McDermott and that McDermott Barge No. 28 was unseaworthy. The district court awarded general damages of $140,000.00 for injury to plaintiff's lumbar spine, $90,000.00 for injury to plaintiff's cervical spine and $65,000.00 for plaintiff's loss of earning capacity. The court found plaintiff at fault and reduced his award by twenty percent.
Compass and "Certain Underwriters at Lloyds" (Lloyds), although they do not have a judgment directed against them, have appealed as indemnitors/insurers of McDermott. As they are aggrieved by the district court's judgment against McDermott they have a right to appeal. State of Louisiana, Department of Transportation and Development v. Estate of Summers, 527 So.2d 1099 (La.App. 1st Cir. 1988). They have presented three assignments of error for review. They argue the trial court erred in finding plaintiff to be a Jones Act seaman. They also argue the trial court erred in awarding damages for plaintiff's cervical problems and in awarding excessive damages on the remainder of plaintiff's claim.
Plaintiff, Russell Danos, has appealed, asserting the trial court erred in assigning him twenty percent comparative fault. He also submits the trial court erred in failing to award pre-judgment interest from the date of the accident and that the court's $65,000.00 award for loss of future earning capacity was so low as to constitute an abuse of discretion.

FACTS
Russell Danos was employed as a structural welder for Compass. Compass, at the time, held an exclusive contract to supply structural welders to McDermott. During Danos' employment he worked only on McDermott's construction barges, which were being used to "set jackets." A "jacket" is the base structure of an offshore platform which is set into water by a derrick *971 barge. The structural welders are used mainly to weld together sections of pilings that are driven through the legs of the jacket and into the floor of the Gulf of Mexico. This is the method used to secure or "set" the jacket so that a deck may be added and the necessary drilling or production equipment affixed.
Danos spent seventy to eighty percent of his working hours on the jacket while welding the sections of pilings. His equipment, however, was at all times located on the derrick barge, as the jacket is only an infrastructure which for the most part is located underwater.
Danos was injured when he slipped and fell down a set of stairs on the derrick barge to which he was assigned.

SEAMAN STATUS
As plaintiff's action was filed in the Louisiana courts pursuant to 28 U.S.C. sec. 1333, the "saving to suitors" clause, federal substantive admiralty and maritime law applies to the action. Portier v. Texaco, Inc., 426 So.2d 623 (La.App. 1st Cir. 1982), writ denied, 433 So.2d 165 (La.1983). Appellate review of a case brought under the Jones Act and General Maritime Law is governed by Rule 52(a) of the Federal Rules of Civil Procedure[1]; under federal law and jurisprudence the findings of the trial judge on the merits may not be disturbed unless they are clearly erroneous. Portier v. Texaco, Inc., 426 So.2d at 625-626.
Under the Jones Act a seaman is entitled to recover damages for personal injury caused by the negligence of his employer. The statute does not define the term "seaman." However, we are guided jurisprudentially by the test set forth in Offshore Co. v. Robison, 266 F.2d 769 (5th Cir.1959). In Robison, the court found an evidentiary basis existed for submission of the status question to a jury,
(1) if there is evidence that the injured workman was assigned permanently to a vessel ... or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.
266 F.2d at 779.
The term "vessel" as used in the Robison test has been expanded to include an identifiable group or fleet of vessels. Barrett v. Chevron U.S.A., Inc., 781 F.2d 1067 (5th Cir.1986).
The trial court found Danos satisfied the Robison standard through his permanent assignment to McDermott's fleet of construction barges and because his work contributed to the mission of the vessels. In its well written reasons for judgment, the court relied on Ardoin v. J. Ray McDermott Co., 641 F.2d 277 (5th Cir.1981), in deciding the status issue. The case involved a structural welder who was injured on one of McDermott's derrick barges. The work done by Ardoin and Danos was identical. The trial court in Ardoin granted a summary judgment, finding as a matter of law, that Ardoin was not a seaman. The Fifth Circuit reversed, holding a reasonable person could conclude, under the facts of the case, that Ardoin was a seaman.
Compass and Lloyds argue that Ardoin was somehow overruled or its holding diminished by the Barrett case. In Barrett, the court listed various definitions of the word "permanent" as used in the Jones Act *972 seaman test. The court set out the description used in Ardoin, citing it as one of the broadest definitions it had used. The court then went on to state that the "varying formulations reflect the principle that the permanent attachment aspect of the crew member status determination, like the status determination as a whole, is an inherently factual question." Barrett, 781 F.2d at 1074.
We in no way find Barrett signals disapproval of the Ardoin case. Barrett merely used the Ardoin description as one illustration of the many definitions given to the word "permanent" in the status context.
Compass and Lloyds also cite various cases which are somewhat factually similar to the instant case, wherein it was found that the plaintiffs lacked seaman status. However, the facts of these cases do not resemble the instant facts as well as do those in Ardoin's.
As this case and Ardoin present nearly identical factual scenarios, we hold the trial court was not manifestly erroneous in concluding Danos was a seaman for Jones Act purposes.

COMPARATIVE FAULT
Plaintiff asserts the trial court erred in reducing his award by twenty percent based on his comparative fault. Under the Jones Act, while a seaman has a duty to protect himself, this duty is slight. Colomb v. Texaco, 736 F.2d 218 (5th Cir. 1984). In a judge trial of an admiralty claim, the question of contributory fault is treated as a fact question, the finding of which should not be overturned on review unless clearly erroneous. Kratzer v. Capital Marine Supply, Inc., 645 F.2d 477 (5th Cir.1981).
After a thorough examination of the record before us, we are unable to say that the trial court erred with respect to its finding of comparative fault on the part of plaintiff.
While we do not agree with defendant's argument that plaintiff should have chosen a safer set of stairs to descend, we do find the testimony as to plaintiff's grip on the handrails of the stairs may have led the trial court to assign him twenty percent fault. The plaintiff, at trial, could not remember whether he was holding on to the handrail. Of the two witnesses to the fall, one thought plaintiff was holding onto the railing and one testified that plaintiff was "bumping his hand along the handrail." We find the trial court could have clearly assigned the plaintiff twenty percent comparative fault on the basis that he was either not holding on to the handrail as he descended the stairs or he was not gripping the handrail properly.
Therefore, we hold the district court did not err in its apportionment of the fault which brought about plaintiff's injury.

DAMAGES
In this section of our opinion, we will address the assignments of error of Compass and Lloyds which assert that the award of damages for plaintiff's cervical problems was erroneous and that the remainder of the award was excessive, in addition to plaintiff's argument that the award granted for loss of earnings was so low as to constitute an abuse of discretion.
A trial judge's assessment of damages is a finding of fact and is reviewed under the clearly erroneous standard. A verdict is excessive if it is greater than the maximum amount a trier of fact could properly have awarded. Sosa v. M/V Lago Izabal, 736 F.2d 1028 (5th Cir.1984).
Compass and Lloyds point to the length of time between plaintiff's accident and his eventual treatment for cervical problems, coupled with the opinions of Drs. Guidry and Dabezies, in arguing that the onset of cervical problems was not causally related to the accident.
Plaintiff's accident occurred on September 10, 1985. His initial visit to the Houma Orthopedic Clinic was on September 30, 1985. At that time, he completed a "pain drawing", wherein the outline of a human body is marked by the patient in the areas in which he complains of pain. One of the areas marked was the cervical region. However, plaintiff's initial treatment involved *973 the lumbar region for which he underwent surgery on October 8, 1985. On April 10, 1986, plaintiff visited the Clinic, complaining of a three week history of neck pain. Dr. Dexter Gary was plaintiff's primary treating physician. Dr. Gary's partner, Dr. Gary Guidry, saw plaintiff on this visit. The April 10, 1986 office visit was one of only two office visits Dr. Guidry handled. Based on his limited exposure to plaintiff, Dr. Guidry's opinion was that plaintiff's cervical problems were not related to the accident, primarily because of the time involved between the accident and the complaint. Dr. Eugene Dabezies, who saw plaintiff once at the request of the defendants, also believed the time period between the accident and complaint of pain to have been too lengthy to relate the cervical problem with the accident.
Dr. Dexter Gary, plaintiff's primary treating physician, based on his extensive treatment of plaintiff, found the cervical symptomatology was caused by the accident. He testified that patients may have primary and secondary complaints. The secondary complaints can be of a lesser degree symptomatically but become more symptomatic, especially after the primary complaint has been treated. He found this to be the case with plaintiff's cervical problems. He also opined that because plaintiff did not vocalize well with people, he may not have informed Dr. Guidry of all his complaints or history during that one office visit.
The trial court found plaintiff's cervical injuries were related to the accident. It based the finding on the testimony of Dr. Dexter Gary, plaintiff's primary treating physician. After a thorough review of the record, we can not say that the trial court was clearly erroneous in this finding.
Compass and Lloyds next argue the damages awarded were excessive. Plaintiff was awarded $140,000.00 in general damages for the injury he suffered to his lumbar region. The injury caused plaintiff to undergo lumbar surgery, including a fusion, which resulted in a thirty percent permanent physical impairment of his body. He was awarded $90,000.00 for his cervical spine injury which also resulted in surgery, including a fusion. This surgery resulted in a ten percent permanent physical impairment to his body. We do not find that the damages awarded for these injuries are greater than the maximum amount the trial court could have awarded for these injuries.
Our review of the trial court's judgment now takes us to the award for future lost wages of $65,000.00. Assignments of error addressing the awards excessiveness and inadequacy have been briefed.
The trial court's oral reasons for judgment acknowledge that plaintiff had a sporadic earnings record. It found that plaintiff proved only those earnings which he listed on his tax returns. Plaintiff did not file tax returns for the years 1980, 1981, 1982, 1983 and 1985. His 1984 tax return shows a gross income of $15,418.51.
After reviewing the entire record as it relates to plaintiff's future loss of earnings, we can not say the trial court violated either the maximum recovery rule or abused its discretion by awarding an inadequate sum for this element of damages.

PRE-JUDGMENT INTEREST
In the final assignment of error plaintiff complains of the trial court's failure to award pre-judgment interest from the date of the accident. As plaintiff's case is brought under the Jones Act as well as the general maritime law, the award of pre-judgment interest is discretionary with the trial court. Hirstius v. Louisiana Materials Company, Inc., 413 So.2d 611 (La. App. 1st Cir.), writ denied, 415 So.2d 943 (La.1982). We find no abuse of discretion in the trial court's failure to award prejudgment interest in this case.
The judgment appealed from is affirmed. Costs of this appeal are taxed equally against Compass and Lloyds.
AFFIRMED.
NOTES
[1] 1. Fed.R.Civ.P. 52(a) provides, in pertinent part, as follows:

(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.