# PETER ETU, Plaintiff

## v.

## FAIRLEIGH DICKINSON UNIVERSITY WEST INDIES LABORATORY, INC., Defendant

Civil No. 1985/115

District Court of the Virgin Islands

Div. of St. Croix

May 16, 1986

THOMAS ALKON, ESQ., St. Croix, V.I., *for plaintiff*

WILFREDO GEIGEL, ESQ., St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

At issue in these cross-motions for partial summary judgment is whether the plaintiff can be considered a seaman, for purposes of the Jones Act, whether he is a seaman entitled to maintenance and cure, and whether releases he signed bar this suit against the defendant. A question of fact remains as to whether the plaintiff can be considered a seaman, for both the Jones Act and for maintenance and cure, while working as a support diver on a hydrolab mission. The plaintiff cannot be considered a seaman, for either the Jones Act or for maintenance and cure, after the completion of his second mission on August 2, 1984. Additionally, the releases signed by the plaintiff are either void or inapplicable to the situation at hand.

### I. FACTS

The plaintiff, Peter Etu ("Etu"), was hired by the defendant, Fairleigh Dickinson University West Indies Laboratory, Inc. ("West Indies Lab"), as a support diver. Support divers service and supply aquanauts engaged in seven-day "missions" in the hydrolab habitat which is anchored in fifty feet of water in Salt River, St. Croix. Support divers perform a variety of functions which include: shuttling food and equipment from the surface to the habitat, manning and maintaining support craft stationed at the surface while the aquanauts are diving outside of the lab, and assisting the aquanauts as they ascend and descend from the habitat. The support craft are small boats all under thirty feet in length.

After arriving on St. Croix, and prior to starting work, Etu was required to sign releases absolving West Indies Lab of its liability for any injuries sustained by Etu while he was employed by the Lab.

283

Etu participated in missions 84-8 and 84-9. Mission 84-8 began on July 2, 1984, and ended on July 12, 1984. Mission 84-9 began on July 25, 1984, and ended August 2, 1984. Support divers are not employees of West Indies Lab during the time between missions. Etu was originally scheduled to work on the next mission.

On July 10, 1984, during his first mission, Etu developed mild symptoms of decompression sickness, commonly known as "the bends." He continued to dive. On July 26, 1984, during his second mission, Etu developed severe symptoms of decompression sickness and underwent treatment in West Indies Lab's recompression chamber. Etu recovered from this episode.

On August 6, 1984, Etu went diving with Richard Rounds and Dr. William Shane. Both Rounds and Shane are members of the West Indies staff. During this dive Etu again developed severe symptoms of decompression sickness. Unfortunately, these symtoms are allegedly permanent.

On May 20, 1985, Etu filed suit against West Indies Lab alleging causes of action under the Jones Act, for unseaworthiness, and for maintenance and cure. The complaint was amended on February 13, 1986, to add additional counts for breach of maintenance and cure and for reckless indifference. At oral argument on April 23, 1986, we allowed the plaintiff to amend his complaint a second time adding a negligence count.

On April 1, 1986, West Indies Lab moved for summary judgment arguing Etu could not be considered a seaman for purposes of the Jones Act and, in the alternative, to bar Etu from suing West Indies Lab since he had released them from liability. Etu responded arguing he was a seaman from July 2, 1984, through August 2, 1984, that the releases were void, and that summary judgment should be entered in his favor with respect to his request for maintainance and cure.

As stated, we heard oral argument on April 23, 1986, at which time we reserved our ruling.

## II. DISCUSSION

A. *Jones Act*

■ The Jones Act states in part:

> Any seaman who shall suffer personal injury in the course of his employment may . . . maintain an action for damages at law . . . .

46 U.S.C. § 688(a) (1982). To maintain an action under this act, Etu must establish three elements. First, Etu must prove he was an employee of West Indies Lab. Second, he must show that his injuries occurred during the course of his employment. Finally, Etu must establish that he was a seaman protected by the act. We will examine these elements seriatim.

### 1) *Employment Relationship*

■ In order to recover for personal injuries under the Jones Act, Etu has the burden of establishing an employment relationship existed between himself and West Indies Lab. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 791 (1949); Williams v. McAllister Bros. Inc., 534 F.2d 19, 21 (2d Cir. 1976); Welsh v. Utah Dredging Co., 403 F.2d 217 (3d Cir. 1968); Osland v. Star Fish & Oyster Co., 118 F.2d 772 (5th Cir. 1941); Armit v. Loveland, 115 F.2d 308, 313 (3d Cir. 1940).

■ At oral argument, Etu conceded he was not employed by West Indies Lab on August 6, 1984. We therefore grant West Indies Lab's motion for summary judgment with respect to Jones Act claims for those injuries arising after August 2, 1984. For periods prior to August 2, 1984, we need to examine the other two requirements.

### 2) *Injury in the Course of Employment*

■ Divers who sustain diving injuries, such as decompression sickness, have been considered injured within the course of employment. Wallace v. Oceaneering Intern., 727 F.2d 427, 436 (5th Cir. 1984). (The court, distinguishing other Fifth Circuit cases holding oil workers, who lived on board vessels similar to the vessel in Wallace, were not seamen, held that a diver's work necessarily involves exposure to numerous marine perils and is inherently maritime because it cannot be done on land unlike so many offshore oil field occupations which were developed on land and transported to a marine setting.) Etu's injuries from July 10, 1984, and July 26, 1984, resulted from diving and thus occurred in the course of his employment.

### 3) *Seaman Status*

■ In addition to sustaining injuries within the scope of employment, Etu must also show he was a seaman. To determine whether a party is a seaman that party must show:

285

1) a more or less permanent connection with a vessel or fleet of vessels;
2) that are in navigation, and
3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission, or its maintenance during its movement or during anchorage for its future trips.

Barrett v. Chevron U.S.A. Inc., 752 F.2d 129, 132-33 (5th Cir. 1985). See also Desper v. Starved Rock Ferry Co., 342 U.S. 187 (1952); Offshore v. Robinson, 266 F.2d 769, 779 (5th Cir. 1959).

a) *Determination of Seaman Status on Motion for Summary Judgment*

 Etu has the burden of proving seaman status. Bernard v. Binnings Const. Co. Inc., 741 F.2d 824, 828 (5th Cir. 1984). Normally, the determination of seaman status is a question of fact left to the jury. Desper, 342 U.S. at 190; Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 36-37 (3d Cir. 1975), cert. denied, 423 U.S. 1054 (1976). The question of seaman status should be removed from the trier of fact, by summary judgment or directed verdict, only in rare circumstances—marginal Jones Act claims should be submitted to the jury. Bouvier v. Krenz, 702 F.2d 89, 90; Bernard, 741 F.2d at 827.

After examining the relevant standards governing the three requirements for seaman status, we find questions of fact remain as to whether Etu can be considered a seaman from July 2, 1984, through August 2, 1984, and, therefore, choose to leave this issue for the jury.

b) *More or Less Permanent Connection*

 The purpose of the permanency requirement is to ensure that a party seeking seaman status has more than a transitory connection with a vessel or group of vessels. Barrett, 752 F.2d at 134. This requirement has no precise meaning and can include those employed for less than a voyage or for less than a stated term of time. Wallace, 727 F.2d at 434 (length of service is not important); M. Norris, The Law of Seamen (4th ed. 1985) § 30:7 at 349. The lack of a long continued connection with a vessel cannot, as a matter of law, serve to deny seaman's status under the Jones Act to an employee who is injured while assigned to and performing

286

normal crew service. Mach v. Pennsylvania Railroad Co., 317 F.2d 761, 764 (3d Cir. 1963).

The most exhaustive explanation of this requirement is found in Wallace, supra. In Wallace, the parties stipulated that the boat was a vessel in navigation and that the plaintiff, a commercial oil field diver, was aboard to assist in the mission and purpose of the vessel. This stipulation focused the dispute on the final requirement for seaman status—the permanency requirement.

The analysis for determining the permanency requirement in ambiguous cases should focus on:

1) the degree of exposure to the hazards or perils of the sea, and

2) the maritime or *terra firma* nature of the worker's duties.

Wallace, 727 F.2d at 434; citing Mungia v. Chevron Company, 675 F.2d 630, 632-33 (5th Cir. 1982).

The Wallace Court had no difficulty finding a commercial diver, who suffered decompression sickness while engaged in commercial diving activities, was more or less permanently connected with a vessel in navigation. This case, however, could easily be distinguished from the facts before us. We therefore leave this question to the jury.

c) *Vessel in Navigation*

██ ██ In general, ships and vessels include all navigable structures intended for transportation. Cape v. Vallette Dry Dock Co., 119 U.S. 625 (1887). The hydrolab is probably not a vessel for purposes of the Jones Act since platforms permanently fixed to the ocean floor are considered artificial islands. Barrett, 752 F.2d at 133. Cf. 43 U.S.C. § 1333(a)(1) (Outer Continental Shelf Lands Act expressly provides that fixed platforms attached to the seabed are not vessels in navigation). But see M. Norris, The Law of Seamen (4th ed. 1985) § 30:13 at n.60 (moveable offshore drilling rigs and submersible drilling barges have been considered vessels).

The small support craft, which Etu dove from, could be considered vessels. Stallworth v. McFarland, 350 F. Supp. 920, 925 (W.D. La. 1972) aff'd 493 F.2d 1354 (5th Cir. 1974) (fourteen foot aluminum boat used on a lake was considered a vessel for purposes of the Jones Act); Spiller v. Thomas M. Loave, Jr. & Assoc. Inc., 328 F. Supp. 54, 61 (W.D. Ark. 1971) aff'd 466 F.2d 903 (8th Cir. 1972) (sixteen foot aluminum boat used on river was considered a vessel in navigation).

■ We note that the above cases are clearly in the minority. In most cases the craft in question were substantially larger than Etu's support craft. Whether the support craft are vessels is a question for the jury.[1]

c) *Duties Must Contribute to Function of Vessel Mission*

■■ This requirement has been construed to include those workers whose functions do not include maintenance or navigation of the vessel. Barrett, 752 F.2d at 133 (court held worker, who participated in the fabrication of pipe carried on the work barge [vessel], contributed to the specific mission of the vessel). Again, whether Etu contributed to the function of the vessel or mission is a question of fact which we will not remove from the jury.

Since we will allow the jury to determine seaman status, we will deny West Indies Lab's motion for summary judgment for the period from July 2, 1984, through August 2, 1984.

B. *Maintenance and Cure*

■ Maintenance and cure is similar to workmen's compensation in that a seamen or employee is certain to receive compensation to pay for his care so long as his injury did not arise from willful misconduct. Hudspeth v. Atlantic & Gulf Stevedores, Inc., 266 F. Supp. 937 (E.D. La. 1967). Maintenance and cure is a contractual form of compensation given by general maritime law to seamen who fall ill in the service of a vessel. The shipowner's obligation is an incident or implied term of the maritime employment contract. Aguilar v. Standard Oil Co., 318 U.S. 724, 730 (1943); Calmur S.S. Corp. v. Taylor, 303 U.S. 525, 527 (1938); Jones v. Waterman S.S. Corp., 155 F.2d 992 (3d Cir. 1946). If a seaman has not been injured while in the ship's service, he is not entitled to maintenance and cure. Keel v. Greenville Mid-Stream Service, Inc., 321 F.2d 903, 904 (5th Cir. 1963).

■ A suit for maintenance and cure can be distinguished from a suit for personal injury under the Jones Act because maintenance is a matter of right and not predicated upon the culpability of the master or owner of the vessel. Recovery under the Jones Act is based on acts of negligence. Hudspeth, supra.

---

[1] The vessel in question must be capable of navigation at the time of injury. Desper, 342 U.S. at 191. It is undisputed that the support craft were capable of navigation at the time of injury.

■ The test to determine who qualifies as a seaman entitled to maintenance and cure is identical to the test for seaman status under the Jones Act. Hall v. Diamond Mining Co., 732 F.2d 1246 (5th Cir. 1984); Carumbo v. Cape Cod S.S. Co., 123 F.2d 991 (1st Cir. 1941); cf. Fitzgerald v. U.S. Lines Co., 374 U.S. 16 (1963).

■ Like the Jones Act, a suit for maintenance and cure presents questions of fact which should not be disposed of by summary judgment. Murphy v. Light, 211 F.2d 824, 825–26 (5th Cir. 1954). Since we reserved for the jury the issue of seaman status for the Jones Act claims, it would be inconsistent for us to decide seaman status for purposes of maintenance and cure. Therefore, the plaintiff's motion for summary judgment for the period up to August 2, 1984, is denied. Since Etu was not employed by West Indies Lab after August 2, 1984, we will deny Etu maintenance and cure for injuries sustained after that date.

C. *Releases*

■ For a variety of reasons we find the releases signed by Etu do not apply to the facts at hand or are void. Initially we note that the releases were all drawn by West Indies Lab. When a release is drawn by a defendant and the plaintiff passively accepts it, its terms will be construed strictly against the defendant. Restatement (Second) of Torts § 496 B comment (d) (1965).[2]

■ Following this principle, we find that the releases should be limited to absolving West Indies Lab from liability arising from the use of either their equipment or their facilities.[3]

_____

[2] The Restatements have been adopted as the law of the Virgin Islands pursuant to 1 V.I.C. § 4 (1958).

[3] The relevant portions of the three releases, exhibit B of West Indies Lab's motion for summary judgment, are:

1) NOAA Form 22-1: "I am about to embark, or otherwise use, the NOAA equipment noted above entirely upon my own initiative, risk and responsibility."

2) User agreement: "I, the undersigned, in order to gain admission to the Faile Marine Science Center of Fairleigh Dickinson University and to use the equipment . . . ."

3) Assumption of Risk agreement:
"The following agreement is required of all persons entering upon the premises or the offshore area . . . or for utilizing equipment designated there for any reason whatsoever."

Affidavits accompanying West Indies Lab's motion indicate that on August 6, 1984, Etu was not using West Indies Lab's equipment or facilities. We therefore find that the releases do not apply to the August 6, 1984, incident.

▋ The releases are void for the period prior to August 2, 1984, when Etu was using West Indies Lab's equipment and facilities. The Restatement (Second) of Contracts § 195(2)(a) (1979) states:

> A term exempting a party from tort liability for harm caused negligently is unenforceable on grounds of public policy if
>
> (a) the term exempts an employer from liability to an employee for injury in the course of his employment.

Comment (f) to the Restatement (Second) of Torts § 496(B) (1965) explains the rationale for this rule stating:

> Where the defendant and the plaintiff are employer and employee, and the agreement relates to injury to the employee in the course of his employment, the courts are generally agreed that it will not be given effect. The basis for such a result usually is stated to be the disparity in bargaining power and the economic necessity which forces the employee to accept the employer's terms, with the general policy of the law which protects him against the employer's negligence and against unreasonable contracts of employment.

We therefore find that the releases are void for the periods prior to August 2, 1984.[4]

## III. CONCLUSION

In summary we find that Etu cannot be considered a seaman, for purposes of either the Jones Act or for maintenance and cure, for injuries arising after August 2, 1984. We leave to the jury the

---

[4] Alternatively, we note that the releases are void for purposes of the Jones Act and maintenance and cure counts.

Releases are void under the Jones Act because section 45 U.S.C. § 55, made applicable to the Jones Act by virtue of 46 U.S.C. § 688, provides:

Any contract, rule, regulation, or devise whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act shall to that extent be void.

Releases are also void for purposes of maintenance and cure. Cortes v. Baltimore Insular Line, 287 U.S. 367, 371–72 (1932); Dryden v. Ocean Accident and Guarantee Corp., Ltd., 138 F.2d 291, 293 (7th Cir. 1943); Rutherford v. Sea-Land Service, Inc., 575 F. Supp. 1365, 1371 (N.D. Cal. 1983).

determination of seaman status for the period between July 2 and August 2, 1984.

We also hold that the releases signed by Etu do not apply to the injuries sustained on August 6, 1984, and are void for the period prior to August 2, 1984.

## SUMMARY JUDGMENT

THIS MATTER is before the Court on cross-motions for summary judgment. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED AND ADJUDGED:

THAT the defendant's motion for partial summary judgment with respect to the Jones Act claims for periods after August 2, 1984, be, and the same, is hereby GRANTED; and further

THAT the defendant's motion for partial summary judgment with respect to the Jones Act claims for periods before August 2, 1984, be, and the same, is hereby DENIED; and further

THAT the defendant's motion for summary judgment with respect to the releases be, and the same, is hereby DENIED; and further

THAT the plaintiff's motion for partial summary judgment with respect to maintenance and cure be, and the same, is hereby DENIED.