Thomas DAVIS

v.

SEDCO FOREX.

Civ. A. No. 86–2311.

United States District Court,
E.D. Pennsylvania.

Jan. 9, 1987.

Walter Steinman, Michael Kopac, Philadelphia, Pa., for plaintiff.

John Biezup, Timothy Abeel, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Plaintiff allegedly suffered an injury while working on drilling rig which was located off the coast of Angola. During a pre-trial conference, the parties raised the issue of whether or not plaintiff was a seaman under the Jones Act. The court requested briefing on the issue. On December 15, 1986, 655 F.Supp. 605, after considering the parties' briefs, the court ruled that the plaintiff was to be considered a seaman under the Jones Act. Defendant Sedco Forex has now filed a motion for reconsideration of the December 15 order and memorandum.

## I BACKGROUND

The December 15 Memorandum explicitly recognized that Davis was a seaman under the terms of the Jones Act. In arriving at that conclusion the Court examined the appropriate legal standards and the factual record relevant to the issue. After analyzing the Third Circuit standard and the record the Court determined that there was no genuine dispute as to any material fact and that the appropriate legal standard required that Davis be recognized as a Jones Act Seaman.

Defendant bases its motion on the following arguments. First, the court applied an incorrect legal standard. *See* defendant's memorandum at p. 1, n. 1. Second, plaintiffs set forth inaccurate facts in their briefs on the subject. *See* defendant's motion at p. 1. Third, the record did not support the conclusion that plaintiff Thomas Davis worked with the barge engineer or rig superintendent. *See* defendant's motion at p. 4, at ¶ 13.

As this issue has been sharply litigated and in light of the significant errors alleged by the defendant, the court will again set forth its reasoning in a memorandum. This memorandum will review the appropriate legal standard and the evidentiary record.

## II THE APPROPRIATE STANDARD FOR DETERMINING SEAMAN STATUS

In determining who is a seaman the Third Circuit has announced the following three-part standard:

(a) the ship must be in navigation;

(b) there must be a more or less permanent connection between the plaintiff and the ship; and

(c) the worker be aboard the vessel primarily to aid in navigation.

*Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 36 (3d Cir.1975), *citing to* 1A *Benedict on Admiralty* ¶ 21 (7th ed. 1973); *see also McNeill v. J.E. Brenneman Co.*, 1986 A.M.C. 2241, 2242 (E.D.Pa.1983) [Available on WESTLAW, DCT database].

This Court in analyzing the "in navigation" requirement noted that it merely required the vessel to be engaged as an instrument of commerce or transportation on navigable waters. *Griffith*, 521 F.2d at 37. Also, off shore drilling rigs have been considered vessels. *Gianfala v. Texas Co.*, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955); *see also McNeill*, 1986 A.M.C. at 2245 ("drilling platforms have been found to be Jones Act vessels where they are exposed to the same hazards of the sea as traditional vessels or where they typically function at a distance from the shore"); Norris, *The Law of Seaman*, (4th ed. 1985) § 30.13 n. 60 (citing several cases where drilling rigs have been considered vessels); *see generally Wilkerson v. Teledyne Movible Offshore, Inc.*, 496 F.Supp. 1279, 1283

(E.D.Tex.1980) (discussing Fifth Circuit law).

■ The Third Circuit has had occasion to examine the "in navigation" requirement. Four years after *Griffith,* the Court of Appeals stated "the clear import of our opinion in *Griffith* is that a *maritime worker who does not actually go to sea* but who is injured while performing duties on a navigable vessel must establish that he performed significant navigational functions with respect to that vessel in order to recover under the Jones Act" *Simko v. C & C Marine Maintenance Co.,* 594 F.2d 960, 964–5 (3d Cir.1979) (emphasis added); *See also McNeill,* 1986 A.M.C. at 2251 n. 13 ("where plaintiff is a traditional blue-water seaman, proof of actual navigational functions is not required ...").[1] When a maritime worker is on the high seas and is subject to the risks which face traditional seamen, the "in navigation" requirement should be applied liberally. *See Mietla v. Warner Co.,* 387 F.Supp. 937, 939 (E.D.Pa. 1975).

The above standard is the applicable standard in the Third Circuit. This court followed that standard throughout the December 15 Memorandum and Order. Therefore, defendant's position that the court employed an improper standard is incorrect.

## III  THE FACTUAL RECORD

A summary of the record appears in the December 15 Memorandum and Order. *See* 655 F.Supp. at 606, 607.

Defendant disputes the statement in plaintiffs' memorandum that the rig Sedneth Luanda moved three times during Davis' tenure. A second review of the record reveals the following facts. Apparently, Davis served as an engineer trainee on board the Sedneth from approximately April 27, 1983 to approximately August 24, 1983. *See* Defendant's Exhibit 35, Davis' 1983 Federal Income Tax Return, Defendant's Motion at p. 3, ¶ 10. Also, Davis served as an assistant driller on board the Sedneth from approximately July 25, 1984 to approximately April 2, 1985. Following his injury Davis served on board the rig from approximately October 13, 1985 to November 13, 1985. *See* Defendant's Exhibit 23 which shows Davis' 1984–85 dates of service on board the Sedneth. Davis remained on board the Sedneth for shifts which lasted approximately 28 days. During such shifts, Davis was on board the rig 24 hours a day. The Sedneth was moved at least three times during the time that Davis served as an assistant driller. *See* Defendant's Exhibits 27, 34 and Exhibit D to Defendant's September 30, 1986 Memorandum. The Sedneth was relocated in October, December, and February. Davis was on board the Sedneth when it was moved on December 8–10, 1984. *Compare* Defendant's Exhibit 23 *with* Defendant's Exhibit 27, the surveyor report for move No. 8403. The Sedneth was also moved on October 17–19, 1984. *See* Defendant's Exhibit 35, surveyor's report for move No. 8402. Mr. Davis' 1984 income tax returns indicate that he left Angola on October 17, 1984, the first date of the October move. *See* Defendant's Exhibit 23, Davis' 1984 income tax returns and attached schedule. The Sedneth was again moved on February 17–18, 1985. *See* Exhibit D attached to Defendant's September 30 Memorandum. A review of Mr. Davis' 1985 income tax return also indicates that he was not physically on board the Sedneth during this February move. *See* Defendant's Exhibit 23, Davis' 1985 income tax returns, I.R.S. form No. 2555. The parties have not submitted any evidence concerning the Sedneth's other moves when Davis was a trainee or an assistant driller.

Rigs like the Sedneth are moved approximately eight or nine times a year. *See* Atkins deposition at 21. In the present case, the drilling sites could be 5–30 miles off the coast of Angola. *See* Defendant's exhibit 30. During December 8–10, the Sedneth was moved approximately 10 miles from one site to another.

---

1. *Cf. Etu v. Fairleigh Dickinson University West Indies,* 635 F.Supp. 290 (D. Virgin Islands 1986) (court applied Fifth Circuit standard and did not apply the "aid in navigation" requirement with respect to a deep sea diver who provided support services for an underwater lab).

Defendant also claims that there is no evidence that Davis worked with the barge engineer and the rig superintendent. *See* Defendant's Motion at p. 4, ¶ 13. Davis served as an assistant driller. Mr. Marvin Atkins served as the rig superintendent. In his deposition Atkins stated he assigned the driller, assistant driller and a derrickman, and "some other expatriate personnel to the jackhouses during the moving operations." *See* Atkins deposition at 22. The assistant driller—under the supervision of the rig superintendent—would also insure that movable objects were secure, the rig was watertight and trim, and various plugs were placed in the hull. Atkins deposition at 22–7. Keith Brais, another assistant driller, also testified in his deposition that the assistant drillers work with the barge engineer during moving operations. Brais deposition at 16. In discussing the movement of the Sedneth and the responsibilities of assistant drillers Brais stated:

> When we lower down the rig into the water, [the assistant drillers] watch the center draft markings. We work with the barge engineer via a radio, hand-held radio. And we tell them how low they are in the water, whether the jacking pins are in or whether the fix pins are in or out, vice versa.

Brais deposition at 16. Defendant's argument that Thomas Davis, as an assistant driller, did not work with the rig superintendent or barge engineer during the moving of the Sedneth is misplaced. Upon review of the evidentiary record this court concludes that no material dispute exists concerning Thomas Davis' responsibilities as an assistant driller.

## IV  DISCUSSION

■ The court rejects defendant's arguments that the court employed an improper standard and that the record does not support the conclusion that the duties of an assistant driller did not include working with the rig superintendent and barge engineer during the moving operation.

As noted, the court initially was under the impression that Davis was on board for at least three of the moves. Review of the record also indicates that plaintiff was on board for at least one of the Sedneth's moves in 1984–5. The fact that Davis was on board for only one of the moves rather than three of the moves is of no consequence. Courts must examine the responsibilities of maritime workers when determining whether the worker is a Jones Act seaman. *Senko v. La-Crosse Dredging Corp.*, 352 U.S. 370, 372–3, 77 S.Ct. 415, 416–7, 1 L.Ed.2d 404, 407 (1957) (court examined responsibilities of a deckhand in reinstating jury verdict for plaintiff). The evidentiary record establishes that the responsibility of the assistant driller was to work with the rig superintendent and barge engineer in coordinating the moving and navigation of the rig. *See* Discussion *supra*; December 15 Memorandum. Thus, the assistant drillers—among them Thomas Davis—participated in significant operations connected to the moving and navigation of the rig Sedneth Luanda. Furthermore, in light of the statement made in *Simko*, 594 F.2d at 964–5, the fact that Davis did not spend the majority of his time involved in navigational matters would not preclude him from being considered a seaman. This court reaffirms its conclusion that plaintiff is a seaman under the Jones Act.

An appropriate Order follows.

## ORDER

AND NOW, this 9th day of January, 1987, it is hereby ORDERED that:

1. Defendant's motion for reconsideration of this Court's December 15, 1986 Memorandum and Order is DENIED.

2. Plaintiff's motion for sanctions is held in abeyance until after the resolution of the underlying case.

AND IT IS SO ORDERED.