**Glen SPEARMAN**

v.

**UNITED STATES of America.**

**Civ. A. No. 88–2118.**

United States District Court,
E.D. Pennsylvania.

Aug. 15, 1988.

Arnold Levin, Laurence S. Berman, Philadelphia, Pa., for plaintiff.

Richard J. Stout, Ass't. U.S. Atty., Philadelphia, Pa., Benjamin L. Willey, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, D.C., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Glen Spearman commenced this action, pursuant to the Public Vessels Act, 46 U.S.C.App. Section 781 *et seq.*, and the Suits in Admiralty Act, 46 U.S.C.App. Sections 741–752, against defendant United States of America, alleging that on March 22, 1986, he had an accident on board the USS Independence in which he sustained personal injuries, as a result of defendant's negligence and the defective and unseaworthy nature of defendant's vessel. Count I of the Complaint prays for recovery founded on negligence while Count II seeks relief based upon "Breach of Warranty of Seaworthiness." Pursuant to Fed.R.Civ.P. 56, defendant United States has moved for summary judgment as to Count II of the Complaint on the ground that plaintiff, due to his status as a harbor worker, cannot maintain an action against the United States predicated on the alleged unseaworthiness of the USS Independence. For the reasons that follow, this Court will grant defendant's motion.

## I.

The material facts concerning which there is no genuine issue are as follows: The Naval Regional Contracting Center, Naval Base, Philadelphia, issued contract no. N00140–85–C–1521, as amended by amendment no. P00002 to the Small Business Administration, as prime contractor, and Research Management Corporation ("RMC"), as subcontractor, for the performance of work on the USS Independence while the ship was docked and being retrofitted at the Philadelphia Naval Shipyard. The contract established the scope of work to be performed by RMC employees as assisting shoreside shipyard workers performing hot work (i.e., welding and other related work) on the ship. The contract provides in relevant part:

> The Contractor shall provide competent, trained personnel to assist those shipyard workers accomplishing hot work or working in confined spaces ... The assistance to be provided is to enhance the safety of the shipyard worker performing his required duties. The service to be performed by the contractor will be that of a member of the hot work team, commonly called a Fire Watch.

*Contract*, p. 6.

Plaintiff Glen Spearman was employed by RMC to perform work under the aforementioned contract. The USS Independence remained docked at the shipyard and never got underway during the period when the plaintiff was working on board. Plaintiff, who never served as either an officer or enlisted member of the United States Navy, was required to possess the following qualifications:

> Must have completed 10 years of general education. No special experience required. Must be able to communicate in English to report fires/summon assistance under emergency conditions. The incumbent must be physically qualified to carry out the duties required by Fire Watch/Top Watch instructions and/or training. *The individual must successfully pass the required training course outlined herein.* Candidates with less than 10 years of general education may

be approved on a case by case basis by PNSY (Philadelphia Naval Shipyard). (emphasis added)

*Contract*, p. 8. The training course referred to above, exclusively emphasized proper procedures for watching for and preventing fire hazards on board the ship while hot work was being performed.

## II.

██ The basic issue before this Court is whether, as a matter of law, the plaintiff can maintain, in addition to his negligence claim contained in Count I of the Complaint, the breach of seaworthiness claim against defendant United States as contained in Count II of the Complaint. Preliminarily, it should be noted that the theories of negligence and unseaworthiness are analytically distinct. The negligence standard in the maritime context is not substantively different from the negligence standard in the common law. Thus, a vessel owner's duty to those lawfully on board the ship is nothing more than the standard of reasonable care. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959). Conversely, "it is now recognized that the shipowner's liability for failure to furnish a seaworthy vessel is a species of liability without fault and is not limited by conceptions of negligence." Norris, *The Law of Seamen*, Section 27:3 at 200 (4th ed. 1985). A shipowner has an absolute duty to provide to every member of his crew "a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). The duty includes maintaining the ship's equipment in proper operating condition, *Mahnich v. Southern Steamship Co.*, 321 U.S. 96, 104, 64 S.Ct. 455, 459, 88 L.Ed. 561 (1944), and is breached by transitory as well as permanent defects in such equipment. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. at 549, 80 S.Ct. at 932. Thus, "if an unseaworthy condition is present which is the proximate cause of the injury, then the exercise of due diligence or of reasonable care does not relieve the shipowner of his obligation." Norris, *The Law of Seamen*, Section 27:3 at 200.

Whether plaintiff Spearman is entitled to the protective umbrella of the virtual strict liability standard of the warranty of seaworthiness depends upon his status as either a seaman or a harbor worker at the time of the accident. All maritime workers are covered by one of two statutory schemes: the Jones Act, 46 U.S.C.App. Section 688 or the Longshoremen's and Harbor Workers' Compensation Act ("LSHWCA"), 33 U.S.C. Sections 901–950. The Jones Act, enacted in 1915, gives "any seamen" the right to maintain an action for damages at law against his employer for personal injuries suffered in the course of his employment. Because the Jones Act does not define the word "seamen", the interpretation of what persons fall within the Act's coverage has been left to the Courts. Conversely, the LSHWCA, enacted in 1927, covers all persons "employed in maritime employment ... upon navigable waters," and establishes such persons' exclusive rights against their employers. 33 U.S.C. Section 905. The Act excepts from its provisions "a master or member of a crew of any vessel," 33 U.S.C. Section 903(a); Section 902(3). *See Swanson v. Marra Brothers, Inc.*, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946).

For some fifty years from the passage of the LSHWCA, an action based on breach of warranty of seaworthiness was available to maritime workers covered under both the Jones Act (i.e., seamen) as well as the LSHWCA (i.e., harbor workers). *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90, 66 S.Ct. 872, 875, 90 L.Ed. 1099 (1946). However, the harbor workers' entitlement to the warranty of seaworthiness was eliminated by the 1972 amendments to the LSHWCA. Since 1972, the LSHWCA has provided, in pertinent part, that "The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. Section 905(b). *See Cooper Stevedoring Company v. Kopke, Inc.*, 417 U.S. 106, 113 n. 6, 94 S.Ct. 2174, 2178 n. 6, 40 L.Ed.2d 694 (1974) (1972 amendments to the LSHWCA statutorily

overruled *Sieracki* ). Thus, under the maritime law as it stood at the time of the alleged incident in question, plaintiff Spearman could maintain an action against the defendant United States for breach of the warranty of seaworthiness *only if plaintiff were a seaman.* If plaintiff were a harbor worker, an action for negligence against the defendant United States would be, pursuant to the LSHWCA, his exclusive remedy. *See* Gilmore and Black, *The Law of Admiralty,* Section 6–5 (2d ed. 1975).

### III.

The Third Circuit, in *Griffith v. Wheeling Pittsburgh Steel Corporation,* stated three criteria for determining a plaintiff's status as a seaman:

(a) the ship must be in navigation;

(b) there must be a more or less permanent connection between the plaintiff and the ship; and

(c) the worker must be aboard the vessel primarily to aid in navigation.

521 F.2d 31, 36 (3d Cir.1975), *citing to* 1A *Benidict on Admiralty,* Par. 21 (7th ed. 1973); *see also Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952), *reh. den.* 342 U.S. 934, 72 S.Ct. 374, 96 L.Ed. 695 (1952); *Davis v. Sedco Forex,* 660 F.Supp. 85, 86 (E.D.Pa. 1987); Norris, *The Law of Seamen,* Section 2:11 at 69.

■ While the determination of whether a plaintiff is a seaman is normally reserved for the trier of facts, the Third Circuit has held that summary judgment on the issue of seaman status is appropriate under certain circumstances:

The determination of whether the plaintiff is a seaman under the Jones Act should not be taken from the jury by the trial judge if there is an evidentiary basis for making a finding. When conflicting inferences may be drawn from undisputed underlying facts the determination of whether an individual is a seaman must be made by the factfinder. Only when there is no evidentiary basis to support a jury finding that a plaintiff was a seaman when injured, can the court's decision of summary judgment for the de-

fendant be sustained as a matter of law. The standard of review where summary judgment has been granted is strict; the record must negate the probability that evidence calling for a contrary result might be developed at trial.

*Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d at 36; *see also Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir.1980); 6 J. Moore, Federal Practice Par. 56.17[1], at 2464 (2d ed. 1974). Based upon the undisputed underlying facts, we conclude that there is no evidentiary basis to support a jury finding that plaintiff Spearman was a seaman when injured and, accordingly, determine that the entry of summary judgment is appropriate.

This Court need not discuss and will not determine whether the first two *Griffith* requirements for the finding of seaman status are met inasmuch as we conclude that there exists no evidence whatsoever to support an affirmative finding as to the third *Griffith* requirement, to wit, that plaintiff was aboard the USS Independence primarily to aid in navigation. Indeed, when as here, the maritime worker was neither contractually required to nor actually did go to sea in the performance of his job, the Third Circuit requires an increased level of work "in aid of navigation" before certifying that the worker was a seaman:

... The clear import of our opinion in *Griffith* is that a maritime worker who does not actually go to sea, but who is injured while performing duties on a navigable vessel must establish that he *performed significant navigational functions with respect to that vessel* in order to recover under the Jones Act (as a seaman) (emphasis and parenthetical added).

*Simko v. C & C Marine Maintenance Co.,* 594 F.2d 960, 964–65 (3d Cir.1979). We find no such evidence that the plaintiff while aboard the USS Independence performed significant navigational functions.

Plaintiff was a shore based employee of a shore based company which only worked on the ship while it was tied to the dock. Pursuant to the contract with the Department of the Navy, plaintiff's job consisted

solely of assisting the safety of other shore based employees who were doing hotwork on the ship. The plaintiff was not authorized to assist any member of the crew of the USS Independence and was not hired to generally guard the ship as a member of the watch bill. Because, during the entire pendency of plaintiff's employment, the ship never moved from its mooring, it is axiomatic that plaintiff did not perform significant navigational functions with respect to that vessel. Moreover, because the contract neither anticipated nor authorized plaintiff's employment beyond the shore based retrofitting, there was no likelihood of plaintiff performing a *future* navigational function when the USS Independence went to sea. *See Senko v. La Crosse Dredging Corporation*, 352 U.S. 370, 374, 77 S.Ct. 415, 418, 1 L.Ed.2d 404 (1957). Finally, the specific work performed by the plaintiff, to wit, assisting shore based welders in the total retrofitting of the ship, was clearly not the type of work traditionally done by the ship's crew. *United N.Y. & N.J. Sandy Hook Pilots Association v. Halecki*, 358 U.S. 613, 617–18, 79 S.Ct. 517, 519, 3 L.Ed.2d 541 (1959). Indeed, the entire hotwork operation could only be performed while the ship was docked and required both men and equipment lacking any connection with the ship's seagoing operations. *Id.*

A review of cases within this Circuit underscores the propriety of entering summary judgment in the instant matter. In each of the following cases, summary judgment was entered against a plaintiff seeking seaman status. *Griffith v. Wheeling Pittsburgh Steel Corporation*, 521 F.2d at 37–38 (cargo handler who occasionally threw lines from one barge to another when barges were moving); *Specht v. Pittsburgh Coal Co.*, 432 F.Supp. 717, 720 (W.D.Pa.1975) (workman employed as ironworker by vessel repair company injured while removing rubber stripping from vessel); *Chapman v. M/G Transport Services, Inc.*, 432 F.Supp. 723, 725 (W.D.Pa.1977) (workman who cut out and replaced metal compartments in a barge while it was docked); *Lloyd v. Crestories, Inc.*, 1982 A.M.C. 1697, 1700 (E.D.Pa.1981) (cargo handler who spent one hour per day assisting in the moving of barge); *see also Simko v. C & C Marine Maintenance Co.*, 594 F.2d at 964–65 (affirming directed verdict against worker who cleaned and performed minor repairs on barge).

In summary, because this Court concludes that there is no evidentiary basis to support a jury finding that plaintiff Spearman was aboard the USS Independence primarily to aid in navigation, the determination of whether plaintiff was a seaman will not be submitted to the jury. Rather, we find, as a matter of law, that plaintiff Spearman was not a seaman at the time of the alleged accident and, therefore, is not entitled to bring a breach of warranty of seaworthiness action against defendant United States. Accordingly, we will enter summary judgment as to Count II of the Complaint in favor of defendant United States and against plaintiff.